No. 26-2702

# In the United States Court of Appeals
## For the Eighth Circuit

DEBRA DARRINGTON, AS NEXT FRIEND FOR M.R., ET AL.,

*Plaintiff-Appellees,*

v.

MISSOURI DEPARTMENT OF MENTAL HEALTH, ET AL,

*Defendants-Appellants.*

Appeal from the U.S. District Court for the Western District of Missouri
(2:25-cv-04268-MDH)

**APPELLANTS' OPENING BRIEF**


**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

Louis J. Capozzi III, #77756MO
*Solicitor General*
William J. Seidleck, #77794MO
*Principal Deputy Solicitor General*
Graham D. Miller, #77656MO
*Deputy Solicitor General*
815 Olive Street, Ste. #200
St. Louis, Missouri 63101
Tel. (573) 645-9662
Louis.Capozzi@ago.mo.gov

Caroline M. Brown
Rebecca Wolfe
1220 19th Street NW, Suite 210
Washington, DC 20036
202-499-4258
cbrown@brownandpeisch.com
rwolfe@brownandpeisch.com

*Counsel for Defendants-Appellants*

## SUMMARY OF THE CASE

Plaintiffs, a number of pretrial detainees found incompetent and waiting for mental health restoration services, allege their continued commitment violates their substantive due process rights. The District Court certified a class of these plaintiffs: the "Restoration Class."

However, the Restoration Class does not satisfy Rule 23(a). Commonality and typicality demand that the entire class "suffer[s] the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). But when a pretrial detainee's continued commitment violates substantive due process is highly individualized. *See Jackson v. Indiana*, 406 U.S. 715, 737–38 (1972). Furthermore, when and how Missouri provides restoration services is highly individualized and depends on: the nature of the crime, eligibility for community-based treatment, geographic location of jail, possibility for jail-based treatment, and possibility for circumstances requiring expedited treatment. Thus, it is impossible for the court to resolve these individualized claims in "one stroke." *Wal-mart*, 564 U.S. at 350. Missouri is not aware of any appellate court decision approving a class for claims of this nature, and this Court should decertify. Missouri requests 15 minutes for argument.

# TABLE OF CONTENTS

SUMMARY OF THE CASE .......... ii

TABLE OF CONTENTS .......... iii

TABLE OF AUTHORITIES .......... v

JURISDICTIONAL STATEMENT .......... 1

ISSUES PRESENTED .......... 2

STATEMENT OF THE CASE .......... 4

I. Competency Restoration in Missouri .......... 4

II. Procedural History .......... 9

III. Class Certification .......... 11

STANDARD OF REVIEW .......... 15

SUMMARY OF THE ARGUMENT .......... 16

ARGUMENT .......... 20

I. The Restoration Class does not comply with Rule 23(a). .......... 21

A. When the detention of a pretrial detainee violates substantive due process requires an individualized analysis of each individual's exact circumstances so there is not commonality under Rule 23(a). .......... 22

1. Both the substantive law and DMH's determinations are highly individualized such that there is no commonality. .......... 23

a. The substantive law requires individualized analyses .......... 23

b. DMH makes individualized determinations. .......... 29

2. The District Court's contrary reasoning is insufficient to certify a class. .......... 33

B. Closely related to commonality, the Restoration Class lacks typicality because of the unique circumstances of each pretrial detainee. .......... 34

II. The Restoration Class does not meet either subsection of Rule 23(b) under which the class was certified. .......... 37

A. Individuals bringing their own substantive due process claims cannot establish "incompatible standards of conduct" for Defendants so the Restoration Class cannot satisfy Rule 23(b)(1)(A). .......... 37

B. Both the individualized claims of the class members and the lack of precise relief sought prevent the Restoration Class from being certified under Rule 23(b)(2). .......... 40

III. The Restoration Class is overbroad. .......... 45

CONCLUSION .......... 50

CERTIFICATE OF COMPLIANCE .......... 52

CERTIFICATE OF SERVICE .......... 52

## TABLE OF AUTHORITIES

**Cases**

*1988 Tr. for Allen Child. Date 8/8/88 v. Banner Life Ins. Co.*,
28 F.4th 513 (4th Cir. 2022) .................................................... 35

*Ahmad v. City of St. Louis*,
995 F.3d 635 (8th Cir. 2021).................................................... passim

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................ 37

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)................................................................ 15

*Angela R. v. Clinton*,
999 F.2d 320 (8th Cir.1993)..................................................... 45

*Barney v. Holzer Clinic, Ltd.*,
110 F.3d 1207 (6th Cir. 1997).................................................. 50

*Betts v. Brady*,
316 U.S. 455 (1942)........................................................... 25, 26

*Briggs v. Anderson*,
796 F.2d 1009 (8th Cir. 1986).................................................. 10

*Califano v. Yamasaki*,
442 U.S. 682 (1979)................................................................ 21

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)........................................................... 25, 26

*Cody v. City of St. Louis ex rel. Medium Sec. Inst.*,
103 F.4th 523 (8th Cir. 2024) ............................................. 33, 34

*Coley v. Clinton*,
635 F.2d 1364 (8th Cir. 1980)............................................ 33, 34

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)................................................................... 34

*Custom Hair Designs by Sandy v. Cent. Payment Co.*,
984 F.3d 595 (8th Cir. 2020)............................................................34, 35

*East Tex. Motor Freight System, Inc. v. Rodriguez*,
431 U.S. 395 (1977).....................................................................................21

*Ebert v. Gen. Mills, Inc.*,
823 F.3d 472 (8th Cir. 2016)......................................................................20

*Elizabeth M. v. Montenez*,
458 F.3d 779 (8th Cir. 2006)........................................................... passim

*Ervin v. Busby*,
922 F.2d 147 (8th Cir. 1993)......................................................................24

*Ford v. TD Ameritrade Holding Corp.*,
115 F.4th 854 (8th Cir. 2024) ...........................................................18, 42

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982).....................................................................................22

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
818 F.3d 775 (8th Cir. 2016)......................................................................15

*In re Bendectin Prod. Liab. Litig.*,
749 F.2d 300 (6th Cir. 1984)......................................................................39

*In re Checking Acct. Overdraft Litig.*,
307 F.R.D. 656 (S.D. Fla. 2015)................................................................34

*In re Nissan of N. Am., Inc. Litig.*,
122 F.4th 239 (6th Cir. 2024) ......................................................... passim

*In re St. Jude Med., Inc.*,
425 F.3d 1116 (8th Cir. 2005)....................................................................40

*Irvine v. Johnson*,
4:21-CV-04224-KES, 2024 WL 4766373
(D.S.D. Nov. 13, 2024)...................................................................3, 18, 49

*Jackson v. Indiana*,
406 U.S. 715 (1972).............................................................................. passim

*Jones v. United States*,
463 U.S. 354 (1983) .......... 25

*Kohen v. Pac. Inv. Mgmt. Co.*,
571 F.3d 672 (7th Cir. 2009) .......... 50

*Kremens v. Bartley*,
431 U.S. 119 (1977) .......... 46

*M.D. ex rel. Stukenberg v. Perry*,
675 F.3d 832 (5th Cir. 2012) .......... 41

*McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
523 F.2d 1083 (9th Cir. 1975) .......... 2, 17, 38

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .......... 45, 49

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017) .......... 1

*Morrissey v. Brewer*,
408 U.S. 471 (1972) .......... 25

*Overby v. Anheuser-Busch, LLC*,
178 F.4th 175 (4th Cir. 2026) .......... 27, 28, 50

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
654 F.3d 618 (6th Cir. 2011) .......... 39

*Postawko v. Mo. Dep't of Corr.*,
910 F.3d 1030 (8th Cir. 2018) .......... 15, 35, 43

*Reynolds v. Nat'l Football League*,
584 F.2d 280 (8th Cir. 1978) .......... 2, 38

*Rizzo v. Goode*,
423 U.S. 362 (1976) .......... 44

*Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*,
543 F.3d 597 (10th Cir. 2008) .......... passim

*Stafford v. Bojangles' Restaurants, Inc.*,
123 F.4th 671 (4th Cir. 2024) .................................................. 3, 45, 50

*United States v. DeGarmo*,
450 F.3d 360 (8th Cir. 2006) ............................................................ 48

*United States v. Ecker*,
30 F.3d 966 (8th Cir. 1994) ........................................................ passim

*United States v. Henriques*,
698 F.3d 673 (8th Cir. 2012) .................................................... 2, 25, 26

*United States v. Magassouba*,
544 F.3d 387 (2d Cir. 2008) ........................................................ 27, 47

*United States v. Quintero*,
995 F.3d 1044 (9th Cir. 2021) ..................................................... 23, 24

*United States v. Salerno*,
481 U.S. 739 (1987) ........................................................................ 29

*United States v. Strong*,
489 F.3d 1055 (9th Cir. 2007) ........................................................ 24

*United States v. Washington*,
893 F.3d 1076 (8th Cir. 2018) ........................................................ 48

*Villanueva v. George*,
659 F.2d 851 (8th Cir. 1981) .......................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................ passim

*Washington v. Harper*,
494 U.S. 210 (1990) ........................................................................ 31

**Statutes**

28 U.S.C. § 1292(e) ............................................................................ 1

28 U.S.C. § 1331 .................................................................................. 1

28 U.S.C. § 1343(a)(3) ........ 1

Mo. Const. art. IV, § 37(a) ........ 44

Mo. Rev. Stat. § 552.020.1 ........ 4, 5, 24, 44

Mo. Rev. Stat. § 552.020.3(8) ........ 29, 44

Mo. Rev. Stat. § 552.020.4 ........ 29, 44

Mo. Rev. Stat. § 552.020.12(1) ........ 47

Mo. Rev. Stat. § 552.020.12(4) ........ 8, 9, 30

Mo. Rev. Stat. § 552.020.12(5) ........ 9

Mo. Rev. Stat. § 552.020.12(6) ........ 31

Mo. Rev. Stat. §§ 630 ........ 44

**Rules**

Fed. R. App. P. 23 ........ 15, 20, 38

Fed. R. App. P. 23(a) ........ 12, 16, 18, 20

Fed. R. App. P. 23(b) ........ 13, 20

Fed. R. App. P. 23(b)(1)(A) ........ 2, 13, 17, 39

Fed. R. App. P. 23(b)(1)(A) ........ 13

Rule 23(b)(2) ........ passim

Fed. R. App. P. 23(f) ........ 52

Fed. R. App. P. 32(a)(5) ........ 52

Fed. R. App. P. 32(a)(6) ........ 52

Fed. R. App. P. 32(a)(7)(B)(i) ........ 52

Fed. R. App. P. 32(f) ........ 52

Fed. R. Civ. P. 23(c)(1)(B) .......... 11

Fed. R. Civ. P. 65(d) .......... 43

**Other Authorities**

7AA Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1773 (3d ed. Apr. 2026 update) .......... 39

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). On June 16, 2026, the District Court entered an order certifying two classes of pretrial detainees. App. 381–82; R. Doc. 118, at 14–15. Appellants timely petitioned under Federal Rule of Civil Procedure 23(f) for leave to appeal the class certification orders on June 30, 2026. *See* Pet., No. 26-8009 (filed 8th Cir. June 30, 2026). This Court granted the Petition on August 26, 2026, Order, No. 26-8009 (8th Cir. Aug. 26, 2026), and has jurisdiction over this appeal under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f), *Microsoft Corp. v. Baker*, 582 U.S. 23, 32–33 (2017).

## <u>ISSUES PRESENTED</u>

I. Whether the District Court erred in finding commonality and typicality in certifying a "Restoration Class" of individuals awaiting court-ordered competency restoration, given the individualized analyses required to analyze the substantive due process claims of Restoration Class members?

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).
- *Jackson v. Indiana*, 406 U.S. 715 (1972)
- *Elizabeth M. v. Montenez*, 458 F.3d 779 (8th Cir. 2006)
- *United States v. Henriques*, 698 F.3d 673 (8th Cir. 2012)

II. Whether the District Court erred in certifying the "Restoration Class" under Rule 23(b)(1)(A) when plaintiffs bringing individual substantive due process claims would establish incompatible standards of conduct for DMH?

- Fed. R. Civ. P. 23(b)(1)(A)
- *Reynolds v. Nat'l Football League*, 584 F.2d 280 (8th Cir. 1978)
- *McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 523 F.2d 1083 (9th Cir. 1975)

III. Whether the District Court erred in certifying the "Restoration Class" under Rule 23(b)(2) when the substantive due process claims require an inquiry into the individual circumstances and Plaintiffs have not precisely defined what injunctive relief they are seeking?

- Fed. R. Civ. P. 23(b)(2)
- *Ahmad v. City of St. Louis*, 995 F.3d 635 (8th Cir. 2021)
- *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597 (10th Cir. 2008)

IV. Whether the "Restoration Class's" 90-day period makes the class overbroad?

- *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671 (4th Cir. 2024)
- *Irvine v. Johnson*, 4:21-CV-04224-KES, 2024 WL 4766373 (D.S.D. Nov. 13, 2024), *argued*, No. 25-1995 (8th Cir. Feb. 13, 2026)
- *United States v. Ecker*, 30 F.3d 966 (8th Cir. 1994)

## STATEMENT OF THE CASE

### I. Competency Restoration in Missouri

Missouri does not prosecute any individual who, "as a result of mental disease or defect[,] lacks capacity" to stand trial. Mo. Rev. Stat. § 552.020.1. To implement this protection, Missouri operates a system whereby state trial courts, prosecutors, defense lawyers, the Department of Mental Health (DMH), private providers, and local jails cooperate to evaluate and treat such individuals.

Missouri trial courts are charged with determining whether an individual has capacity to stand trial. *Id.* § 552.020.8. If there is "reasonable cause to believe" that a defendant lacks capacity to stand trial, a court may order an evaluation and appoint either a qualified private provider or DMH to conduct the evaluation. *Id.* § 552.020.2. Once an evaluation is complete, the state trial court must determine whether (1) the individual has capacity to stand trial; (2) the individual does not have capacity to stand trial but there is a "substantial probability" the individual will regain it; or (3) the individual does not have capacity and is not likely to regain it. *Id.* §§ 552.020.8, 552.020.12. If the court determines that the individual lacks capacity but is likely to

regain it, a highly individualized process for provisioning restoration services begins.

The state trial court must first examine whether the individual has been "charged with a dangerous felony," "murder in the first degree," "rape in the second degree," or "the attempts thereof." *Id.* § 552.020.3(8). If the individual has not been accused of any of those crimes, the court determines whether "the accused can comply with bond" and "[m]ay be appropriately treated" in the outpatient community-based setting. *Id.* § 552.020.3(8)–.4; *see also* App. 287–89; R. Doc. 77-1, ¶¶ 30, 34. If the court chooses to release the individual into the community on bond, the individual is offered—and the court may order the individual to receive receive—community-based restoration services. *See* App. 287–89; R. Doc. 77-1, ¶¶ 30, 34.

If the individual is not eligible for bond or the court elects not to release the individual on bond, the detainee remains in the local jail and is placed on a state-wide waitlist for inpatient competency restoration services provided in a DMH-operated state psychiatric hospital. App.

284–85; R. Doc. 77-1, ¶¶ 19–21.[1] Although individuals generally receive restoration services based on the order in which they entered the waitlist, the operation of the waitlist varies based on where the individual is detained, the crime with which the individual is charged, and mental or physical health conditions requiring expedited admission. *See id.* ¶¶ 17, 21–22; App. 142; R. Doc. 6-1, at 11; App. 160; R. Doc. 6-2, at 12.

Missouri operates three state hospitals which provide competency restoration: Nixon Forensic Center at Fulton State Hospital, Center for Behavioral Medicine (Kansas City), and St. Louis Forensic Treatment Center – North. *Id.* App. 283; R. Doc. 77-1, ¶ 17; *see also* App. 142; R. Doc. 6-1, at 11. The Fulton State Hospital is the only high security state psychiatric hospital so those individuals accused of a dangerous felony, murder, or rape (or attempts) will only receive restoration services there. App. 142; R. Doc. 6-1, at 11; *see also* App. 160; R. Doc. 6-2, at 12. For those not accused of a dangerous felony, murder, or rape, admission to a

---

[1] Individuals released on bond are also placed on the waitlist in the event their release is revoked or they are unable to receive mental health treatment in the outpatient setting. *See id.* ¶ 21.

state psychiatric hospital is based largely on the region of where the individual is being held in jail: Those in the eastern region of the State receive services from St. Louis Forensic Treatment Center – North while those in the western region go to the Center for Behavioral Medicine. App. 142; R. Doc. 6-1, at 11.

In addition to the geographic and nature of the criminal charges components of the waitlist, "individuals who are either an imminent danger to themselves or others or who are gravely disabled may receive expedited admission when such admission is critical to their health and safety or the health and safety of others." App. 285; R. Doc. 77-1, ¶ 22. Thus, an individual needing expedited admission could go to a state hospital in the opposite region if there were a bed available in that facility. DMH learns of those detainees who may need expedited treatment through a variety of means: reports from DMH's Forensic Mobile Teams, the jails where the individuals are detained, the individuals' guardians or attorneys, and the judges overseeing the cases. *Id.* DMH will then review the circumstances and any supporting documentation for the individual case and then make a determination if this individual requires expedited admission. *Id.*

In addition to providing restoration services through the State's hospitals, DMH also performs jail-based competency restoration services. *Id.* ¶¶ 31–33. These services are performed by DMH's Forensic Mobile Teams with certified community-based health organizations. *Id.* As with the state hospitals, these Forensic Mobile Teams operate by region. *Id.* ¶ 32. However, these Forensic Mobile Teams must receive permission from each local jail to provide restoration services, and can be prevented from providing services depending on the current conditions at the jail, for example if the jail were on lockdown. *See id.* ¶ 33. Nonetheless, DMH has successfully restored individuals in jail-based settings. *Id.* Even if an individual is receiving jail-based treatment, he retains his spot on the waitlist in the event the jail-based treatment does not restore his competency. *See id.* ¶ 21.

After an individual's competency is restored, through community-based restoration services, jail-based treatment, or at a state hospital, a court must declare the individual competent to stand trial. Mo. Rev. Stat. § 552.020.12(4). And for those individuals whose competency cannot be restored, the court must still make a determination that there is no "substantial probability that the accused will be mentally fit to proceed

in the reasonably foreseeable future." *Id.* § 552.020.12(6). Until the court makes that determination, individuals being treated in the state hospital must remain in the state hospital. *Id.* § 552.020.12; *see also* App. 286–87; R. Doc. 77-1, ¶ 26. When a state trial court makes these competency determinations is outside of DMH's control, but in the meantime, these restored individuals occupy beds which otherwise could be used by other individuals waiting for restoration services. App. 154–56; R. Doc. 6-2, at 4–6; *see also* App. 286–87; R. Doc. 77-1, ¶ 26. And for those the courts declare incompetent, even after the court's determination, an individual's guardian may refuse to permit the individual to move into a community setting, thus remaining in a state hospital bed. App. 286–87, R. Doc. 77-1, ¶ 26.

Every six months, the court must review the commitment of any individual who is incompetent to determine if "there is a substantial probability [he] will be mentally fit to proceed in the reasonably foreseeable future." Mo. Rev. Stat. § 552.020.12(5).

## II. Procedural History

Plaintiffs filed this action on behalf of themselves and two putative classes. App. 37–90; R. Doc. 1. As relevant here, Plaintiffs

simultaneously filed a motion to certify a "Restoration Class" consisting of individuals currently detained in local jails who have been ordered to receive competency restoration services and are waiting for those services "beyond a constitutionally acceptable time." App. 91–130; R. Docs. 5, 6.[2] Plaintiffs also moved for a preliminary injunction while class certification was pending. R. Doc. 62. After recommendations from both parties, *see* App. 354–67; R. Docs. 116, 117, the court decided to rule on class certification before the preliminary injunction hearing and before this Court's decision in *Irvine v. Johnson*, No. 25-1995 (8th Cir.).

---

[2] Plaintiffs also moved for certification of an "Evaluation Class." *Id.* Although originally certified along with the Restoration Class, *see* App. 397; R. Doc. 121, at 15, the District Court subsequently decertified the Evaluation Class because the previously named lone class representative was "not a member of the Evaluation Class," App. 501; R. Doc. 130, at 3. Therefore, the certification decision for the Evaluation Class is not before this Court. Three purported Intervenor-Plaintiffs have moved to intervene, *see* App. 522–47; R. Doc. 137, but the District Court has not ruled on their motion. If granted intervention, purported Intervenor-Plaintiffs would still need to move to recertify the Evaluation Class before it could be recertified. *Briggs v. Anderson*, 796 F.2d 1009, 1019 (8th Cir. 1986).

## III. Class Certification

On June 16, the District Court certified the Restoration Class for Plaintiffs' substantive due process claims.[3] *See* App. 368–97; R. Docs. 118, 121.[4] The certified class includes:

> All people who are now, or will be in the future, charged with a crime in Missouri state court and are: (a) declared not competent to proceed to trial by the state court; (b) currently detained in a county or city jail or similar facility; (c) court-ordered to receive restoration services by DMH; and (d) awaiting court-ordered competency restoration services to be provided by DMH or its designees for more than 90 days

---

[3] Plaintiffs seemingly understand the Restoration Class to have also been certified with respect to their Americans with Disabilities Act and Rehabilitation Act claims. Opp'n to 23(f) Pet. at 8 n.2, No. 26-8009 (8th Cir. July 10, 2026). However, this is incorrect. Rule 23(c)(1)(B) requires the district court to "define the class and the class claims." The District Court's certification order never once references the Rehabilitation Act and only refers to the Disabilities Act in a list of common questions copied from Plaintiffs' certification motion. *See* App. 388; R. Doc. 121 at 6. Rather, the District Court's certification order speaks only of Plaintiffs' substantive due process claims, *e.g.*, *id.* at 7 ("violates their rights under the Due Process Clause of the Fourteenth Amendment"), at 12 ("level of due process in competency proceedings"), so the Restoration Class was only certified with respect to this claim, *see* Fed. R. Civ. P. 23(c)(1)(B).

[4] After its initial certification order, *see* App. 368–382; R. Doc. 118, the District Court subsequently issued an order with a technical correction to the definition of the Evaluation Class on June 22, *see* App. 383–397; R. Doc. 121. The latter is the operative order on class certification.

> beyond the Restoration order of the circuit court (the "Restoration Class").

App. 395–96; R. Doc. 121, at 13–14.

The District Court determined that this class met Rule 23(a)'s requirements. The District Court held that the class satisfied commonality because pretrial detainees "face common situations – they are in jail, their capacity evaluation has identified a need for restoration services, which have been ordered, but they remain in jail." *Id.* at 8. Although the District Court did acknowledge that pretrial detainees are detained "in different settings," are "suspected of different crimes," and have "different underlying mental illnesses," the District Court did not consider the starkly individualized circumstances of many of these inmates—including whether they qualify for and need front-of-the-line processing. *Id.* at 7–8.

As for typicality, the District Court determined the five named Restoration Class Plaintiffs had typical claims because "all have been found to be incompetent to stand trial and have each spent over a year detained and waiting for DMH to provide court-ordered treatment." *Id.* at 9.

Turning to Rule 23(b), the District Court certified the class under both Rule 23(b)(1)(A) and Rule 23(b)(2). The District Court certified the class under Rule 23(b)(1)(A) because "[l]itigating class members' claims individually would present a risk of varying outcomes in what due process requires" and thus "would create a risk of . . . 'establish[ing] incompatible standards of conduct for the party opposing the class.'" *Id.* at 12 (quoting Fed. R. Civ. P. 23(b)(1)(A)). For Rule 23(b)(2), the District Court certified the class because Plaintiffs complain of "a *systemic* failure" and "seek a transformation of [Missouri's mental health treatment] system." *Id.* at 12–13 (emphasis in original).

In response to Defendants' arguments that Plaintiffs' proposed class definition of waiting "beyond a constitutionally acceptable time" created a fail-safe class, the District Court slightly revised the class definition by adopting a 90-day timeframe—which no party suggested. *Id.* at 13–14. As the District Court explained, this 90-day period "is 150% of the state statutorily adopted limit for completion of the evaluation period." *Id.* at 14. The District Court also relied on the Speedy Trial Act to support its 90-day period for beginning restoration services as the "reasonable, if not minimal, constitutional standard." *Id.*

Missouri timely petitioned for this Court to review the class certification decision, *see* 23(f) Pet., No. 26-8009 (8th Cir. June 30, 2026), and this Court granted review, Order, No. 26-8009 (8th Cir. Aug. 26, 2026).

## **STANDARD OF REVIEW**

This Court reviews the grant of class certification for abuse of discretion. *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018). A district court abuses its discretion when it commits an error of law, *id.*, so legal questions are reviewed *de novo*, *IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 779 (8th Cir. 2016). This Court reviews whether Plaintiffs' claims "are appropriate for class resolution" and may consider the merits "'only to the extent'" they "'are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Postawko*, 910 F.3d at 1037 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

## SUMMARY OF THE ARGUMENT

The District Court committed three independent legal errors in certifying the Restoration Class.

*First*, the Restoration Class does not satisfy Rule 23(a)'s commonality or typicality requirements. The commonality rule demands that the entire class "suffer[s] the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (cleaned up). But here, there can be no common injury. The substantive due process rights for pretrial detainees requires an "individualized inquiry" into the exact circumstances of each individual. *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006). Furthermore, DMH provides these services in a highly individualized manner which depends on the nature of the crime, eligibility for community-based treatment, geographic location of jail, possibility for jail-based treatment, and potential circumstances requiring expedited treatment. Thus, there is no "common answer[]" that would allow class-wide resolution in "'one stroke,'" *In re Nissan of N. Am., Inc. Litig.*, 122 F.4th 239, 247 (6th Cir. 2024) (citation omitted). Relatedly, because the class representatives must prove highly individualized claims, Plaintiffs flunk the typicality requirement too.

*Second*, the Restoration Class meets neither Rule 23(b)(1)(A) nor Rule 23(b)(2) subsections under which the District Court certified the class. *See* App. 394–95; R. Doc. 121 at 12–13. Subsection (b)(1)(A) allows for class certification when plaintiffs bringing separate actions would risk establishing "incompatible standards of conduct" for the Defendant. That separate actions brought by individual plaintiffs "could reach inconsistent results and inconsistent resolutions of the same question of law" does not establish "'incompatible standards of conduct'" within Rule 23(b)(1)(A). *McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975). Thus certification under Rule 23(b)(1)(A) is inappropriate.

Certification under Rule 23(b)(2) fares no better. Rule 23(b)(2) demands both a "cohesiveness among class members with respect to their injuries" and that "the injunctive relief sought must be described in reasonably particular detail such that the court can at least 'conceive of an injunction that would satisfy Rule 65(d)'s requirements.'" *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604–05 (10th Cir. 2008) (Gorsuch, J.) (citation omitted). Neither of these requirements are met here. Plaintiffs' alleged substantive due process injuries are not

sufficiently cohesive because "[d]etermining whether a [pretrial detainee] was harmed involves individualized questions" into his unique circumstances. *Ford v. TD Ameritrade Holding Corp.*, 115 F.4th 854, 860 (8th Cir. 2024). And Plaintiffs "made no attempt to define precisely what permanent injunctive relief they are seeking." *Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th Cir. 2021). Therefore, the District Court abused its discretion in certifying the Restoration Class under (b)(1)(A) and (b)(2).

*Third*, even if this Court determines that Rule 23(a) and (b) are satisfied, the Restoration Class definition is nonetheless overbroad. The District Court defined the class as those people detained in a jail waiting "more than 90 days" for restoration services. App. 397; R. Doc. 121, at 15. Even ignoring the "individualized nature" of the inquiry, another district court in this circuit determined that "waiting four months" for restoration services to begin "does not offend due process." *Irvine v. Johnson*, 4:21-CV-04224-KES, 2024 WL 4766373, at *2 (D.S.D. Nov. 13, 2024), *argued*, No. 25-1995 (8th Cir. Feb. 13, 2026). And that is to say nothing of the four years of "total time in confinement" to determine restorability which this Court determined did not violate the defendant's

due process rights. *United States v. Ecker*, 30 F.3d 966, 967–69 (8th Cir. 1994). So the District Court's setting the "constitutional standard" at 90 days makes the Restoration Class overbroad. *See* App. 396; R. Doc. 121, at 14.

All three of these errors independently require reversal and decertification of the Restoration Class.

## ARGUMENT

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016) (citation omitted). A Plaintiff must satisfy the four explicit prerequisites in Rule 23(a) and at least one of the three subsections of Rule 23(b). *Id.* Rule 23(a) requires showing that the class meets requirements of "numerosity, commonality, typicality, and fair and adequate representation." *Ahmad v. City of St. Louis*, 995 F.3d 635, 643 (8th Cir. 2021) (citation omitted). Here, the District Court found these requirements satisfied and certified the Restoration Class under Rule 23(b)(1)(A) and (b)(2). However, the Restoration Class does not satisfy Rule 23(a)'s requirements because it lacks commonality and typicality due to the individualized nature of Plaintiffs' alleged substantive due process injuries. Additionally, the Restoration Class satisfies neither subsection 23(b)(1)(A) nor (b)(2). Finally, the certified class is overbroad because it sweeps in class members who have waited for restoration services for constitutionally permissible periods of time.

## I. The Restoration Class does not comply with Rule 23(a).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Rule 23(a)'s commonality and typicality requirements enforce that rule. *Id.*

Here, those rules foreclose class treatment because a pretrial detainee's substantive due process right to timely treatment is *highly* individualized. *See Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006). Moreover, lumping all statewide claims into one class is infeasible because the manner in which detainees are processed varies heavily based on the individual's particular condition, individual state trial court orders, the particular facility a detainee is housed in, and many other factors. *See infra* at 29–31. Those individual circumstances guarantee there is no "determination" that "will resolve an issue that is central to

the validity of each one of the [class] claims in one stroke." *Wal-mart*, 564 U.S. at 350.

### A. When the detention of a pretrial detainee violates substantive due process requires an individualized analysis of each individual's exact circumstances so there is not commonality under Rule 23(a).

The District Court erroneously concluded that the Restoration Class satisfied commonality because "[t]hose who have been ordered to receive restoration services similarly face common situations – they are in jail, their capacity evaluation has identified the need for restoration services, which have been ordered, but they remain in jail for an extended period of time in excess of the 6-month reporting period provided by Missouri law waiting for their services to even begin." App. 390; R. Doc. 121, at 8. But this "common situation" elides that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Alleging that each class member "suffer[s] a violation of the same provision of law" is not enough. *Id.* "To be common, the question must 'allow a decisionmaker to reach a yes-or-no answer for the class in one stroke.'" *In re Nissan*, 122 F.4th at

247 (citation omitted). "If the court can answer 'yes' for some class members and 'no' for others, no commonality exists." *Id.*

### 1. Both the substantive law and DMH's determinations are highly individualized such that there is no commonality.

Plaintiffs cannot establish commonality here because there are *two* layers of individualized circumstances underlying all the claims in the class. First, substantive due process claims in this context are highly individualized. *See Elizabeth M.*, 458 F.3d at 787. Second, the manner in which DMH provides mental health services to class members is highly individualized. Consider each layer in turn.

#### a. The substantive law requires individualized analyses.

Start with the substantive law at issue. Plaintiffs allege that their pretrial confinement violates their substantive due process rights under the principle articulated in *Jackson v. Indiana*, 406 U.S. 715 (1972). However, *Jackson* held that due process prohibits the "*indefinite* commitment of a criminal defendant solely on account of his incompetency" without civil commitment proceedings. *Id.* at 731 (emphasis added). "[I]nsofar" as a statute provides for "indefinite commitment," it violates substantive due process. *United States v.*

*Quintero*, 995 F.3d 1044, 1052 (9th Cir. 2021). But it is uncertain if *Jackson* even applies to Plaintiffs' claims. No Plaintiff is held indefinitely, Mo. Rev. Stat. § 552.020.12, and the "nature and duration" of each Plaintiff's commitment has a "reasonable relation" to the purpose of providing competency restoration services, even when those services require a wait. *See Jackson*, 406 U.S. at 738. These detentions are "'inherently limited'" to the time it takes to "determine the likelihood of competency restoration," *i.e.*, the time it takes for an inpatient psychiatric hospital to become available to provide restoration services to the detainee (if the detainee requires such services), and for the psychiatric hospital to restore the detainee's competency or determine that the individual is unlikely to regain competency. *See Quintero*, 995 F.3d at 1052 (quoting *United States v. Strong*, 489 F.3d 1055, 1061 (9th Cir. 2007)). Any potential wait for competency restoration "does not exceed the original purpose" of the incarceration and thus does not violate an individual's substantive due process rights. *Ervin v. Busby*, 922 F.2d 147, 150 (8th Cir. 1993) (citing *Jackson*, 406 U.S. at 738).

But even if *Jackson* does apply, there is still no commonality in this case. "[D]ue process is flexible and calls for such procedural protections

as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Courts must give "[c]onsideration" to the "given set of circumstances" and recognize that "not all situations calling for procedural safeguards call for the same kind of procedure." *Id.* Thus, "the Due Process Clause does not require [the State] to make classifications that fit every individual with the same degree of relevance." *Jones v. United States*, 463 U.S. 354, 366 (1983). This "individualized nature" of each situation is certainly true for pretrial detainees—each accused of different crimes and each suffering from different mental infirmities. *Elizabeth M.*, 458 F.3d at 787.

This Court evaluates what constitutes a substantive due process violation "based upon the totality of the circumstances." *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) (en banc); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) ("Asserted denial [of substantive due process] is to be tested by an appraisal of the totality of facts in a given case." (quoting *Betts v. Brady*, 316 U.S. 455, 462 (1942))). Determining whether the period of detention for an incompetent pretrial detainee violates substantive due process is no different. *See, e.g.*, *United States v. Henriques*, 698 F.3d 673, 674–75 (8th Cir. 2012) (evaluating

confinement based on totality of the circumstances); *United States v. Ecker*, 30 F.3d 966, 967–69 (8th Cir. 1994) (same). Ultimately, a court must decide whether a defendant's continued commitment is "justified by progress toward [the] goal" of restoring the defendant's competency to stand trial. *Jackson*, 406 U.S. at 738. So long as the totality of the circumstances establish that the defendant's commitment "bear[s] some reasonable relation to [this] purpose," his continued commitment does not offend due process. *Henriques*, 698 F.3d at 674 (quoting *Jackson*, 406 U.S. at 738). As with any individualized analysis, what "may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." *Cnty. of Sacramento*, 523 U.S. at 850 (quoting *Betts*, 316 U.S. at 462).

Recognizing the need for analysis of the circumstances, the Supreme Court refused to "prescribe arbitrary time limits" for when pretrial detention exceeds the limits of substantive due process. *Jackson*, 406 U.S at 738. This Court need look no further than its own precedent to see how the individualized nature drives the analysis. *Compare Ecker*, 30 F.3d at 967–69 (holding that commitment for four years to determine

restorability was not a due process violation), *with Jackson*, 406 U.S. at 738 (holding that commitment for "three and one-half years" without possibility of restorability violated substantive due process). Indeed, "it is difficult to identify the precise time at which an incompetent defendant's continued detention becomes presumptively unreasonable." *United States v. Magassouba*, 544 F.3d 387, 417 (2d Cir. 2008). Thus, time of confinement, while relevant, is not the extent of the totality of the circumstances.

Thus, for each individual in the class, the substantive due process limit on the period of confinement will vary *based on that individual*—including his condition and the crime he committed. *See Elizabeth M.*, 458 F.3d at 787; *see Ecker*, 30 F.3d at 967–69 (holding that commitment for four years to determine restorability was not a due process violation). That individualization precludes class treatment. *Wal-Mart*, 564 U.S. at 350.

In this case, the District Court erred in considering the class at "a lofty level," *Overby v. Anheuser-Busch, LLC*, 178 F.4th 175, 183 (4th Cir. 2026) (Wilkinson, J.): "they are in jail, their capacity evaluation has identified the need for restoration services, which have been ordered, but

they remain in jail for an extended period of time," App. 390; R. Doc. 121, at 8. According to the District Court, these "common situations" all would be resolved by "the sole legal question"—whether waiting in jail for restoration services "violates class members' due-process rights." App. 390; R. Doc. 121, at 8.[5] But alleging that each class member "suffer[s] a violation of the same provision of law" is not enough. *Wal-Mart*, 564 U.S. at 350. Commonality requires the "decisionmaker to reach a yes-or-no answer for the class in 'one stroke.'" *In re Nissan*, 122 F.4th at 247 (citation omitted). In other words, through adopting this "abstract common question[]," the District Court "obscure[d] more significant subquestions not susceptible to easy class-wide resolution" and abused its discretion. *Overby*, 178 F.4th at 182.

---

[5] Perhaps foreshadowing its merits determination, the District Court refers to this wait as a "failure." *Id.*

**b. DMH makes individualized determinations.**

There are many other individualized questions relevant here—because the State treats class members differently based on a variety of circumstances.

For each class member, when and how one receives treatment varies dramatically:

- Whether the individual is eligible for community-based treatment, *see* Mo. Rev. Stat. § 552.020.3(8) (making an individual "charged with a dangerous felony," "murder in the first degree," "rape in the second degree," or "the attempts thereof" ineligible for bond);
- Whether the individual poses a flight risk or danger to the community, *see United States v. Salerno*, 481 U.S. 739, 748–49 (1987);
- Whether the state trial court "determines that the accused can comply with bond" and can be "appropriately treated" in the community-based setting, Mo. Rev. Stat. § 552.020.3(8)–.4;

- Which particular facility the individual is detained in and whether that facility allows the Forensic Mobile Team to conduct jail-based treatment, App. 285; R. Doc. 77-1, ¶ 22;
- How many people in that facility are being provided services by the Forensic Mobile Team; *see id.*;
- In which region the individual is jailed and the availability of services at that region's state hospital, App. 142; R. Doc. 6-1, at 11;
- Whether the individual is accused of "a dangerous felony," "murder in the first degree," "rape in the second degree," or "the attempts thereof" such that he can only receive restoration services from the high security Nixon Foresnic Center at Fulton State Hospital, *id.*; *see also* App. 160; R. Doc. 6-2, at 12;
- The duration that the individual waits in jail for restoration services at a state psychiatric hospital, including whether the individual's transfer to the state psychiatric hospital is expedited because the individual poses "an imminent danger

to [himself] or others" or is "gravely disabled," App. 285; R. Doc. 77-1, ¶ 22;

- Whether state trial courts have declared competent those individuals whose competency has been restored such that they can be transferred out of the state hospitals and clear space for those waiting for services, Mo. Rev. Stat. § 552.020.12(4); *see also* App. 154–56; R. Doc. 6-2, at 4–6; App. 286–87, R. Doc. 77-1, ¶ 26;
- Whether state trial courts have declared incompetent those "substantial[ly]" unlikely to be "mentally fit to proceed in the reasonably foreseeable future," Mo. Rev. Stat. § 552.020.12(6);
- Whether for those determined unlikely to regain competency, their respective guardians permit them to move into a community setting and thus clear out a bed in the state hospital, App. 286–87, R. Doc. 77-1, ¶ 26; and
- Whether the individual refuses treatment or medication, *see Washington v. Harper*, 494 U.S. 210, 229 (1990).

Consequently, class members have highly individualized circumstances that could lead to very different answers on what substantive due process requires for each of them. *See Elizabeth M.,* 458 F.3d at 787. One class member, for example, could receive jail-based treatment through medication and examination—and the timing and quality of that treatment could vary depending on the relevant detention facility and the number of detainees competing for medical staff's attention. Another class member might receive a similar treatment plan but then be pushed to the front of the line for inpatient care based on emergency circumstances. App. 285; R. Doc. 77-1, ¶ 22. The State cannot and does not treat every pretrial detainee the same regardless of their particular circumstances.

Consequently, Rule 23(a)'s rules prevent class treatment for all the class members' substantive due process claims in "one stroke." *Wal-Mart*, 564 U.S. at 350. Given the individualized nature of the required legal and factual analysis, demonstrating that one individual's detention is unconstitutional "will do nothing to demonstrate the invalidity of another's." *Wal-Mart*, 564 U.S. at 355–56. In other words, Plaintiffs cannot show that all members of the Restoration Class "suffer the same

injury" such that the decisionmaker could "reach a yes-or-no answer for the class in 'one stroke.'" *Id.* at 348; *In re Nissan*, 122 F.4th at 247. The District Court finding that the Restoration Class satisfied Rule 23(a)'s commonality was thus an abuse of discretion.

**2. The District Court's contrary reasoning is insufficient to certify a class.**

The District Court did not offer much contrary reasoning—and that reasoning is unpersuasive. In analyzing commonality, the District Court relied "on isolated language from a singular binding authority" about the standard for liability. *Cody v. City of St. Louis ex rel. Medium Sec. Inst.*, 103 F.4th 523, 530–31 (8th Cir. 2024); *see* App. 388–91; R. Doc. 121, at 6–9.[6] Even then, the District Court made one lone cite to this binding authority in the form of a supplemental parenthetical authority. *See* App. 389–90; R. Doc. 121, at 7–8. Worse yet, this one binding authority, *Coley v. Clinton*, 635 F.2d 1364 (8th Cir. 1980), is about whether the

[6] The District Court also cited *Wal-Mart*, but these citations are about the standard for commonality, not about the "standard for liability." *Cody*, 103 F.4th at 530.

variations in "relief sought" by plaintiffs precluded certification under Rule 23(b)(2), *id.* at 1378–79, but never addresses the "standard for liability," *Cody*, 103 F.4th at 350.

Beyond *Coley*, the District Court relied solely on an out-of-circuit district court case revolving around breach of contract and consumer protection claims. App. 388–91; R. Doc. 121, at 6–9 (citing *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015)). Those claims are nothing like Plaintiffs' substantive due process claims. Thus, the District Court failed to carefully analyze the "standard for liability" under the Due Process Clause before certifying a class—contrary to this Court's instructions. *See Cody*, 103 F.4th at 530. The District Court simply did not conduct the "rigorous analysis of Rule 23(a)'s requirements" that the Supreme Court and this Court demand. *Id.* (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

### B. Closely related to commonality, the Restoration Class lacks typicality because of the unique circumstances of each pretrial detainee.

Typicality exists "if the [named plaintiffs'] claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Custom Hair Designs by Sandy v. Cent.*

*Payment Co.*, 984 F.3d 595, 604 (8th Cir. 2020) (quoting *Postawko*, 910 F.3d at 1039).[7] The District Court found typicality existed because the named plaintiffs "have been found to be incompetent to stand trial and have each spent over a year detained and waiting for DMH to provide court-ordered treatment." App. 391; R. Doc. 121, at 9. This typicality finding overlaps significantly with the District Court's commonality determination. *See id.* at 8–9 (determining commonality met for "[a]ny person" waiting to "receive competency restoration services" while "being held in jail"). Thus, as here, "[w]hen typicality and commonality arguments overlap significantly, the analysis for commonality largely determines typicality." *Custom Hair Designs*, 984 F.3d at 604; *see Wal-*

---

[7] Plaintiffs may suggest that Defendants waived any argument related to typicality. *See* Opp'n to 23(f) Pet. at 5, No. 26-8009 (8th Cir. July 10, 2026). However, by raising commonality below, App. 254–55; R. Doc. 41, at 12–13, Defendants preserved the ability to argue typicality, *see 1988 Tr. for Allen Child. Date 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 522 n.3 (4th Cir. 2022) (holding that party "did *not* waive" commonality argument even though party's brief below did "not contain a separate section for commonality" because it did "contain" an argument on typicality and commonality and typically "tend to merge" (internal quotations omitted) (cleaned up)).

*Mart*, 564 U.S. at 349 & n.5 (noting that when the "crux of the case is commonality," the "'commonality and typicality requirements of Rule 23(a) tend to merge'" (citation omitted)). Just as the presence of a common legal theory does not establish commonality, *see supra*, it too "does not establish typicality when proof of a violation requires an individualized inquiry." *Elizabeth M.,* 458 F.3d at 787.

The Restoration Class also lacks typicality independent of the overlapping commonality and typicality analysis. As the District Court noted, all five of the named Restoration Class Plaintiffs "have spent *over a year* detained and waiting for . . . treatment." App. 391; R. Doc. 121, at 9 (emphasis added). But the class includes "[a]ll people" who have been waiting for restoration services "for more than 90 days." *Id.* at 15. Thus, the named Plaintiffs' claims are based on pretrial commitment substantially longer than many other class members. This time difference destroys typicality where the reasonableness of continued commitment depends in part on the length of confinement. *See Jackson*, 406 U.S. at 738. For example, whether Defendants violated substantive due process with respect to a Plaintiff who waited in jail for 13 months for inpatient restoration services says nothing about whether Defendants

violated substantive due process with respect to a Plaintiff who waited in jail for 3.5 months and was then moved to the front of the line because DMH determined that inpatient admission was "critical to [his] health and safety." App. 285; R. Doc. 77-1, ¶ 22. The District Court abused its discretion in determining that named Plaintiffs" claims were typical of the class.

## II. The Restoration Class does not meet either subsection of Rule 23(b) under which the class was certified.

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The District Court certified the Restoration Class under Rule 23(b)(1)(A) and Rule 23(b)(2). App. 394–95; R. Doc. 121, at 12–13. However, neither Rule supports certifying the class.

### A. Individuals bringing their own substantive due process claims cannot establish "incompatible standards of conduct" for Defendants so the Restoration Class cannot satisfy Rule 23(b)(1)(A).

Rule 23(b)(1)(A) allows certification of a class when separation actions would create a risk of establishing "incompatible standards of conduct for the party opposing the class." The District Court reasoned

that substantive due process requires "the same standards" to "apply to all competency proceedings for all indigent criminal defendants" so individuals litigating their own claims "would present a risk of varying outcomes in what due process requires." App. 394; R. Doc. 121, at 12. Under this reasoning, the District Court certified the Restoration Class under Rule 23(b)(1)(A). *Id.* That was error.

The District Court's conclusion that the Restoration Class met Rule 23(b)(1)(A) because some plaintiffs might succeed in separate actions while others might not is "untenable." *McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975). That separate actions brought by individual plaintiffs "could reach inconsistent results and inconsistent resolutions of the same question of law" does not establish "'incompatible standards of conduct'" within Rule 23(b)(1)(A). *Id.* Instead, "incompatible standards of conduct" of subdivision (b)(1)(A) "encompasse[s] the possibility that adjudications of separate actions could set incompatible standards of conduct for the [defendant]." *Reynolds v. Nat'l Football League*, 584 F.2d 280, 284 (8th Cir. 1978). The (b)(1)(A) class is "applicable when practical necessity forces the opposing party to act in the same manner toward the

individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable." 7AA Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1773 (3d ed. Apr. 2026 update). For example, a (b)(1)(A) class is suited "to determine the rights and duties of a riparian landowner vis-à-vis a class composed of downriver property owners." *Id.* (citing Fed. R. Civ. P. 23 Advisory Committee's Note to 1966 amendment, subdivision (b)(1)(A)).

By contrast, certification under Rule 23(b)(1)(A) is "not appropriate simply because 'some plaintiffs may be successful in their suits against [defendants] while others may not.'" *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011) (quoting *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984)). Because the District Court erred in determining that Rule 23(b)(1)(A) was satisfied, the District Court abused its discretion in certifying the Restoration Class under Rule 23(b)(1)(A).

**B. Both the individualized claims of the class members and the lack of precise relief sought prevent the Restoration Class from being certified under Rule 23(b)(2).**

The District Court's certification under Rule 23(b)(2) fares no better. Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The District Court considered this standard met for the Restoration Class because Plaintiffs complain of a "*systemic* failure" in Missouri pretrial detainee mental health services and "seek a transformation of that system." App. 394–95; R. Doc. 121, at 12–13. However, in doing so, the District Court abused its discretion because it failed to take into account the "individualized nature" of Plaintiffs' claims and failed to account for Plaintiffs' failure to define precisely what relief they are seeking.

"Rule 23(b)(2) class certification may be proper when the primary relief sought, as in this case, is declaratory or injunctive." *Ahmad*, 995 F.3d at 644. However, simply seeking declaratory or injunctive relief is insufficient. "Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude

certification." *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (Gorsuch, J.). This cohesiveness requires that "[i]njuries remedied through (b)(2) actions are really group as opposed to individual injuries. The members of a (b)(2) class are generally bound together through preexisting or continuing legal relationships or by some significant common trait such as race or gender." *Ahmad*, 995 F.3d at 644 (quoting *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005)). Unless "'the class members have been harmed in essentially the same way,' the proposed Rule 23(b)(2) class is deficient." *Id.* (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 848 (5th Cir. 2012)). Said alternatively, if redressing the class members' injuries requires "inquiry into individual circumstances of characteristics of class members," then certification under Rule 23(b)(2) is inappropriate. *Shook*, 543 F.3d at 604.

This cohesiveness is of great importance "because unnamed class members are bound without an opportunity to opt out." *Ahmad*, 995 F.3d at 644. Thus, as here, where determining whether each individual's delay in receiving mental health restoration services violates his substantive due process rights depends on the "individualized nature" of

his particular case, making this determination on a class-wide basis could frustrate some individuals' ability to bring their own claims regarding the specific nature their confinements. *See Elizabeth M.*, 458 F.3d at 787. Again, the exact circumstances of whether a delay for a pretrial detainee violates his substantive due process rights include not only the time of commitment but many other factors detailed in bullet points above. *See supra* at 29–31. Thus because "[d]etermining whether a [pretrial detainee] was harmed involves individualized questions" into his unique circumstances, "certification is not appropriate." *Ford v. TD Ameritrade Holding Corp.*, 115 F.4th 854, 860 (8th Cir. 2024).

Nor can the individualized nature of these claims be "avoided simply by formulating an injunction at a stratospheric level of abstraction." *Shook*, 543 F.3d at 604. "At the class certification stage, the injunctive relief sought must be described in reasonably particular detail such that the court can at least 'conceive of an injunction that would satisfy Rule 65(d)'s requirements,' as well as the requirements of Rule 23(b)(2)." *Id.* at 605 (cleaned up) (citation omitted). Plaintiffs, in their motion for class certification, "made no attempt to define precisely what permanent injunctive relief they are seeking." *Ahmad*, 995 F.3d at

644. Plaintiffs seek to enjoin Defendants "from failing to provide timely access to competency assessment and restoration services" and "to develop a remedial plan to reduce wait times for competency assessments and restoration treatment to within constitutional limits." App. 127–28; R. Doc. 6, at 31–32.[8] "[R]equesting injunctive relief that simply prescribes '[timely]' or '[constitutional]' levels of services fails to indicate how final injunctive relief may be crafted to 'describe in reasonable detail the acts required.'" *Shook*, 543 F.3d at 606 (cleaned up) (quoting Fed. R. Civ. P. 65(d)). Plaintiffs "broad injunctive relief . . . does not 'relate only to a single policy regarding one particular injury'" and thus does not conform with Rule 23(b)(2). *Ahmad*, 995 F.3d at 644 (quoting *Postawko*, 910 F.3d at 1040).

[8] Nor is Plaintiffs' motion for a preliminary injunction specific enough to "satisfy Rule 65(d)'s constraints and thus conform with Rule 23(b)(2)'s requirement." *Shook*, 543 F.3d at 605 n.4. Almost identically to their class certification motion, in their motion for preliminary injunction Plaintiffs request an order requiring Defendants to "provide mental health services and competency restoration treatment to all Plaintiffs and class members within a constitutionally appropriate time" and file "a detailed proposal explaining how they will comply." R. Doc. 62, at 2.

This definite relief is particularly important here where litigating these substantive due process claims on a class-wide bases would "essentially confer[] upon [the District Court] jurisdiction to assert control over the operation of . . . mental health facilities, a major component of [Missouri] state government. A federal court may not lightly assume this power." *Elizabeth M.*, 458 F.3d at 784.

Under the Missouri Constitution and by statute, DMH is responsible for providing treatment, care, education and training for individuals in the State with mental illness, developmental disabilities, or substance use disorders. Mo. Const. art. IV, § 37(a); Mo. Rev. Stat. §§ 630 et seq. It would be impossible for Defendants to comply with Plaintiffs' requested indefinite preliminary relief (or anything similar) on a class-wide basis: Defendants cannot force a court to order out-patient community-based restoration, *see* Mo. Rev. Stat. § 552.020.3(8)–.4, change in which region an individual is committed, *see* App. 142; R. Doc. 6-1, at 11, order a jail to allow jail-based restoration services, App. 285; R. Doc. 77-1, ¶ 22, force a court to declare an individual competent to clear out a bed in a state hospital, *see* Mo. Rev. Stat. § 552.020.12, and cannot create additional inpatient state psychiatric bed capacity, *see* App.

284; R. Doc. 77-1, ¶¶ 18–19. Any relief on a class-wide basis would not be "mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Elizabeth M.*, 458 F.3d at 784 (quoting *Rizzo v. Goode*, 423 U.S. 362, 378 (1976)). As this Court has acknowledged, federal courts "are poorly suited to the management of state agencies." *Angela R. v. Clinton*, 999 F.2d 320, 326 (8th Cir.1993).

Therefore, because Plaintiffs' alleged injuries are highly individualized and because Plaintiffs failed to precisely define their requested relief, the District Court abused its discretion in certifying the Restoration Class under Rule 23(b)(2).

### III. The Restoration Class is overbroad.

Finally, at a minimum, this Court should decertify the class because it is overbroad. *Cf. Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 681 (4th Cir. 2024) (Wilkinson, J.). In particular, by including all individuals committed for more than 90 days while awaiting restoration services, the District Court made the class "over-inclusive" by including many individuals with meritless claims. *See Messner v.*

*Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *Bojangles*, 123 F.4th at 681.

"[B]efore certifying a class in order to adjudicate constitutional claims," courts are "oblig[ed]" to "'stop, look, and listen.'" *Kremens v. Bartley*, 431 U.S. 119, 135 (1977). However, the District Court blew through any caution for adjudicating the constitutional dimensions of what substantive due process is required for pretrial detainees awaiting mental health restoration services in certifying the Restoration Class. After, Plaintiffs had originally proposed a fail-safe class, the District Court revised the class definition and "adopted" a 90-day period for restoration services to have begun for jailed pretrial detainees. App. 395–96; R. Doc. 121, at 13–14. The District Court determined that this period was a "reasonable, if not minimal, constitutional standard." *Id.* at 15. The District Court made this constitutional adjudication without any adversarial briefing,[9] *but see Kremens*, 431 U.S. at 135, and it is erroneous for two reasons.

---

[9] In their Reply Brief in support of class certification, Plaintiffs merely suggested that the District Court "could . . . revise the proposed class

First, the District Court "adopted the 90-day period in the class definition because it is 150% of the state statutorily adopted limit for completion of the *evaluation* period." App. 396; R. Doc. 121, at 14 (emphasis added). But the statutory time period for evaluation has no relevance for *restoration*. In fact, the statute gives a different time period with respect to restoration. *See* Mo. Rev. Stat. § 552.020.12(1) (requiring DMH to report status of individual "[s]ix months after" commitment for lack of competency). Thus, the District Court erred by importing the statutory period for evaluation into the Restoration Class definition.

Second, the District Court augmented its reasoning for this 90-day period by relying on the 70 days for the commencement of the accused's trial under the Speedy Trial Act. App. 396; R. Doc. 121, at 14. As the District Court concluded, "the 90-day period is a reasonable, if not minimal, constitutional standard." *Id.* However, "the Constitution itself draws *no* bright lines signaling when an incompetent defendant's

---

definition[] to reflect a specific point in time at which an [incompetent to stand trial] individual's prehospitalization wait violates due process." App. 271–72; R. Doc. 45 at 12–13.

continued detention to restore competency becomes unreasonable." *Magassouba*, 544 F.3d at 416 (emphasis added). Neither this Court nor the Supreme Court have ever adopted a bright-line rule as to what time period (if any) of confinement while awaiting restoration services amounts to a substantive Due Process violation. *See Jackson*, 406 U.S. at 738 (holding that accused "cannot be held more than [a] reasonable period of time"). What makes this a "reasonable period of time" turns on the individualized nature of the specific circumstances. *See supra* at 29–31. Nonetheless, the District Court purportedly determined the "constitutional standard"—without referencing the Due Process Clause or any constitutional caselaw. *See* App. 396; R. Doc. 121, at 14.

Instead, the District Court cited to the Speedy Trial Act's 70-day requirement as somehow informing the constitutional standard. *See id.* However, this Court has "refuse[d] to borrow" a competency-related day period from another federal statute and "to read [this period] into the [Speedy Trial Act]," *United States v. DeGarmo*, 450 F.3d 360, 363 (8th Cir. 2006), and this Court should not do so in reverse. Rights under the Speedy Trial Act are "distinct" from those of the Sixth Amendment, *United States v. Washington*, 893 F.3d 1076, 1079 (8th Cir. 2018), and it

goes without saying that the Sixth Amendment is distinct from the Fourteenth Amendment. So any time period from the Speedy Trial Act cannot inform the time for Plaintiffs' alleged substantive due process claim.

Based on these errors, the District Court defined the "constitutional" period at more than 90 days, which is "so broad[] as to include many members who could not bring a valid claim." *Messner*, 669 F.3d at 825. The 90-day period established by the District Court is shorter than the "four months" that another district court in this circuit determined "does not offend due process." *Irvine v. Johnson*, 4:21-CV-04224-KES, 2024 WL 4766373, at *2 (D.S.D. Nov. 13, 2024), *argued*, No. 25-1995 (8th Cir. Feb. 13, 2026). And that is to say nothing of the four years of "total time in confinement" to determine restorability which this Court determined did not violate due process. *Ecker*, 30 F.3d at 967–69. And yet, the District Court's Restoration Class definition establishes that the "constitutional standard" at a level which clashes with these cases. App. 396; R. Doc. 121, at 14. In other words, this "definition is so broad that it sweeps within it persons who could not have been injured" so "it

is too broad." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (Posner, J.).

Courts cannot certify overbroad classes. *See Bojangles*, 123 F.4th at 681–82. This "overbreadth poses the unmistakable risk that 'the district court may inadvertently be lump[ing] together a great many disparate plaintiffs with widely varying individual claims.'" *Overby*, 178 F.4th at 185 (alteration in original) (quoting *Bojangles*, 123 F.4th at 681); *see also Elizabeth M.*, 458 F.3d at 787 (recognizing "individualized nature" of these claims). And "named plaintiffs' claims are not typical of those of the [widely time varying] class certified" so named plaintiffs cannot "adequately represent such a class." *Bojangles*, 123 F.4th at 682 (quoting *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997)). Because the District Court certified—at minimum—an overbroad class, this Court must reverse with instructions to decertify.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court and decertify the Restoration Class.

Dated: October 19, 2026

Respectfully submitted,

**CATHERINE L. HANAWAY**
ATTORNEY GENERAL OF MISSOURI

<u>*/s/ Louis J. Capozzi III*</u>
Louis J. Capozzi III, #77756(MO)
*Solicitor General*
William J. Seidleck, #77794(MO)
*Principal Deputy Solicitor General*
Graham D. Miller, #77656(MO)
*Deputy Solicitor General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax. (573) 751-0774
Louis.Cappozi@ago.mo.gov
William.Seidleck@ago.mo.gov
Graham.Miller@ago.mo.gov

<u>*/s/ Caroline M. Brown*</u>
Caroline M. Brown
Rebecca Wolfe
1220 19th Street NW, Suite 210
Washington, DC 20036
202-499-4258
cbrown@brownandpeisch.com
rwolfe@brownandpeisch.com

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(i) in that it contains 9,147 words excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using Microsoft Word (size 14 Century Schoolbook font).

*/s/ Louis J. Capozzi III*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026, I filed the foregoing Statement of Issues using the Court's electronic filing system, which sends notification to all counsel of record.

*/s/ Louis J. Capozzi III*